John P. Margiotta (*jmargiotta@frosszelnick.com*)
Felicity Kohn (*fkohn@frosszelnick.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Tel:  (212) 813-5900

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AQUAZZURA ITALIA SRL,

              Plaintiff,

              v.

STEVE MADDEN LIMITED,

              Defendant.

**No.** _____

**COMPLAINT**

**JURY DEMAND**

Plaintiff Aquazzura Italia SRL ("Aquazzura" or "Plaintiff"), by its undersigned attorneys, Fross

Zelnick Lehrman & Zissu, P.C., for its Complaint against defendant Steve Madden Limited

("Defendant"), alleges as follows:

<u>NATURE OF THE ACTION AND RELIEF SOUGHT</u>

     1.     This is an action for trade dress infringement, design patent infringement, unfair

competition, and deceptive trade practices arising out of Defendant's serial infringement of

numerous of Plaintiff Aquazzura's distinctive shoes.  Following its launch in 2011, Aquazzura

skyrocketed to fame in the fashion world.  Its shoes are coveted by fashionistas and celebrities

alike, and are regularly photographed and written about in high profile publications such as

*Vogue*, *Harper's Bazaar*, *Elle*, and the *New York Times*, as well as in myriad fashion blogs.  As

described in *Elle*, founder of Aquazzura "Edgardo Osorio hit the footwear scene with Aquazzura

and quickly joined rank with the biggest players in the shoe game."  As a testament to the broad range of Aquazzura's appeal, not only are "it" girls such as Kendall Jenner and Kim Kardashian regularly featured wearing the shoes, but as recently as May 2016, a *New York Times* fashion column described Aquazzura's shoes as "so comfortable, I would recommend them to a caryatid."  Attempting to capitalize on Plaintiff's enormous success and popularity, Defendant has repeatedly knocked off Plaintiff's distinctive shoe designs, manufacturing, marketing, and selling copies that are confusingly similar to Plaintiff's.

2.      Plaintiff markets and sells footwear throughout the United States and worldwide under the AQUAZZURA mark.  Many of the designs Plaintiff sells under the AQUAZZURA mark have achieved significant prominence in the shoe industry and are now instantly recognized by consumers throughout the United States as having emanated from Aquazzura. This includes the distinctive designs of the Sexy Thing, Aquazzura's signature shoe that made it a household name in the fashion industry, the Wild Thing, and the Christy (together, the "Aquazzura Shoes").  As set forth more fully below, due to Aquazzura's commercial success, unsolicited publicity about the company and its sought-after designs, and resulting widespread consumer recognition of its distinctive designs, Plaintiff has common law trade dress rights in the configuration of the Aquazzura Shoes.  In addition, Plaintiff owns a design patent in its Christy design.

3.      Upon information and belief, Defendant's predatory business model depends on copying these and other popular Aquazzura designs, which are virtually identical but of lower quality than Aquazzura's luxury products (the "Infringing Shoes").  An example of Defendant's blatant copying is shown below:

 

Aquazzura Wild Thing                    Steve Madden Sassey

Defendant has copied nearly every detail of Plaintiff's well-known and popular Wild Thing shoe, from the shape and silhouette to the fringe covering the toes, to the tassel on the heel. Upon information and belief, Defendant even offers its Infringing Shoe in a nearly identical color palette.

4.      This is not the first time that Defendant has copied Aquazzura's Shoes. In 2014, Plaintiff objected to Defendant's sale of a knock-off of its Belgravia flat shoe. A year later, Steve Madden began selling its Kaitlynn shoe, which imitates almost exactly Aquazzura's high-heeled model of the same shoe. Images of the shoes at issue are shown below:





Aquazzura Belgravia Flat                    Steve Madden Daayna





Aquazzura Belgravia Pump                    Steve Madden Kaitlynn

On information and belief, Defendant has stopped selling each of these shoes.

5. Defendant's flagrant copying of multiple of Plaintiff's well-known designs is likely to cause consumers to falsely believe that Defendant's products come from or otherwise are associated with Plaintiff and to harm Plaintiff and the substantial goodwill it has developed in its proprietary designs and trade dress. Such consumer confusion and harm to Plaintiff will continue as long as Defendant persists in using infringing trade dress for its own goods. Moreover, upon information and belief, Defendant has engaged in said conduct in a bad faith attempt to improperly siphon away Plaintiff's customers and potential customers.

6.   To prevent Defendant from causing further harm to Plaintiff and its customers,

Plaintiff brings this action for trade dress infringement and unfair competition under Section

43(a) of the Lanham Act and related claims under New York State law.  Plaintiff also brings this

action for design patent infringement based on its ownership of a design patent that Defendant

has clearly violated with its Lecrew shoe design.  Plaintiff seeks an injunction, an accounting of

Defendant's profits flowing from use of infringing trade dress, damages, attorneys' fees, and

such other relief as the Court deems just and proper.

## THE PARTIES

7.     Plaintiff is a limited liability company organized and existing under the laws of

Italy with a principal place of business at Viale Mazzini 40, 50132 Florence, Italy.  As set forth

in greater detail below, Aquazzura owns all rights in and to the Aquazzura Shoes.

8.     Upon information and belief, Defendant Steve Madden Limited is a limited

liability company located at 52-16 Barnett Avenue, Long Island City, New York, 11104.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this controversy under 28 U.S.C.

§§ 1331and 1338(a)-(b) because this action arises under the Lanham Act, 15 U.S.C. §§ 1051, *et

seq*.

10.     The Court has supplemental jurisdiction over Plaintiff's state law claims under

Section 1367(a) of the United States Judicial Code, 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Defendant under Sections 301 and/or

302 of the New York Civil Practice Laws and Rules because Defendant maintains an office in

this district, and continuously and systematically conducts, transacts, and solicits business in this

district, because Defendant ships and sells infringing products in and to this district, and because the events giving rise to this Complaint occurred in this state and/or had effects in this state.

12.     Venue is proper in this district pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c) because Defendant is subject to personal jurisdiction in this district due to its voluntary transacting of business herein, including offering products to consumers in this district, shipping and selling products in and to this district, and because a substantial portion of the events at issue have arisen and will arise in this judicial district.

FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.     Plaintiff and Its Well-Known Luxury Footwear

13.     Plaintiff Aquazzura is a renowned manufacturer and seller of luxury fashion footwear.  It was founded in 2011 by Edgardo Osorio, who previously studied at the London College of Fashion, and worked for both Salvatore Ferragamo and Roberto Cavalli, among others.  From the moment the brand launched, Aquazzura designs became the "must-have" shoes of every season.  Within days of Barney's ordering Aquazzura's debut Spring/Summer 2012 collection, the shoes had sold out.  Aquazzura's popularity has only grown since that point, and today it does millions of dollars of business worldwide.

14.     The shoe that launched Aquazzura's success is the iconic Sexy Thing, shown below in black:



15.     Additional popular and distinctive Aquazzura designs include the Wild Thing and the Christy:



Aquazzura Wild Thing                                    Aquazzura Christy

16.     Aquazzura's success is due to its elegant designs that – unlike many luxury high-heeled shoes – are comfortable to walk in.  For instance, Aquazzura's heels made *Elle*'s list of "The 7 Most Comfortable High Heels" in May 2016, and in a previous *Elle* issue, another writer described Aquazzura pumps – and the iconic Sexy Thing in particular – as "*the most comfortable heels around.*"  (Emphasis in the original.)  As noted above, because of Aquazzura's unique mix of stylishness, elegance, and comfort, the brand "has a universal appeal," as *Vogue* described it,

and is worn by women of all ages and styles, from Kendall Jenner to Julianne Moore to Olivia Palermo, to name just a few.

      17.    Plaintiff's shoes are sold throughout the United States, through a wide variety of channels, including but not limited to:

- Department stores, such as Barney's, Bergdorf Goodman, Neiman Marcus, and Saks Fifth Avenue;

- Shoe boutiques, including the Aquazzura boutique in Manhattan; and

- Web sites, including but not limited to those of the department stores listed above, as well as sites such as *farfetch.com* and *net-a-porter.com*.

      18.    Defendant's infringing products are available through these same channels of trade, including department stores, shoe boutiques, department store websites, and e-commerce sites. Defendant's Steve Madden boutique is located merely one mile from Plaintiff's Aquazzura boutique in Manhattan.

      19.    Plaintiff has extensively used and promoted its luxury footwear.   Due to its phenomenal commercial success and the unsolicited media coverage that has followed, Aquazzura's Shoes have become well-known in the fashion industry and among consumers, who have come to associate its distinctive designs exclusively with Aquazzura.

      20.    Plaintiff is the owner of U.S. Design Patent No. D750,359, which claims a shoe design that covers Plaintiff's Christy shoe design. A copy of this Design Patent is annexed as Exhibit A.

      21.    In addition, each of the Aquazzura Shoes, the Sexy Thing, the Wild Thing, and the Christy has its own distinctive trade dress, and each has become extremely well known, in

part as a result of the tremendous press coverage the Aquazzura Shoes have received in New York, nationally, and internationally (together, the "Aquazzura Trade Dresses").

22.     As shown in the photographs in this complaint, the overall appearance and particular combination of elements of the Sexy Thing make it distinctive, those individual elements consisting of the overall shape of the bootie, the three-pronged cloverleaf cutout in the center of the bootie, the stiletto heel, the open toe and the tie closure at the back of the ankle. Collectively, these elements form the Sexy Thing trade dress.

23.     As shown in the photographs in this complaint, the overall appearance and particular combination of elements of the Wild Thing shoe make it distinctive, those individual elements consisting of the overall shape of the shoe, including the angle and slope of the sole of the shoe, the stiletto heel combined with an open toe, the distinctive fringed vamp (the band covering the toe) and the ankle-wrap closure made of tasseled string.

24.     As shown in the photographs in this complaint, the overall appearance and particular combination of elements of the Christy shoe make it distinctive, those individual elements consisting of the overall shape of the shoe, the pointed toe, scalloped sides and laces strung through the toe that form a striking criss-cross pattern when tied over the wearer's foot, all of which connects through the highest point of the scallop to a high back and an ankle wrap closure.

25.     The striking and distinctive nature of the Aquazzura Trade Dresses ensures that, even from far away, consumers will recognize and be drawn to Plaintiff's footwear.

26.     The combination of elements that make up each of the Aquazzura Trade Dresses is not functional for purposes of Section 43(a)(3) of the Lanham Act, 15 U.S.C. § 1125(a)(3), as it is not essential to the use or purpose of the products, does not affect the cost or quality of

products, and, when used exclusively by Plaintiff, does not put Plaintiff's competitors at a significant non-reputation-related disadvantage.

27.     As a result of Plaintiff's substantial effort and investment and the success of Plaintiff's products bearing the Aquazzura Trade Dresses, the Aquazzura Trade Dresses have acquired "secondary meaning" in that they have become distinctive and instantly recognizable to the public as exclusively denoting Plaintiff and signaling the high quality of its products. The Aquazzura Trade Dresses achieved this status long before Defendant first began its infringing activities, described below.

28.     The Aquazzura Trade Dresses represent enormous goodwill of Plaintiff and are tremendously valuable assets of Plaintiff.

29.     Based on Plaintiff's extensive use, marketing and promotion of its goods bearing the Aquazzura Trade Dresses, Plaintiff owns common law rights in the Aquazzura Trade Dresses in connection with its products.

**B.     Defendant's Infringing Activities**

30.     Upon information and belief, Defendant is a company involved in the manufacture, importation, distribution, and sale of shoes and accessories and has on more than one occasion been involved in selling shoes that are alleged to copy the trade dress of well-known fashion designers.

31.     Upon information and belief, well after Plaintiff obtained exclusive rights in each of the Aquazzura Trade Dresses, Defendant – in a blatant attempt to trade off the renown of the Aquazzura Shoes and to confuse consumers – began manufacturing and marketing infringing shoes that knocked off the designs of the Aquazzura Shoes.

32.     On a visual comparison, Defendant's Sharlit is virtually identical to Aquazzura's Sexy Thing, as shown below:

    

Aquazzura Sexy Thing                    Steve Madden Sharlit

33.     Defendant's Sharlit shoe mimics every key element of the well-known and distinctive trade dress of Aquazzura's Sexy Thing.

34.     Likewise, a visual comparison of Defendant's Sassey shows that it is virtually an exact copy of Aquazzura's Wild Thing, as shown below:

    

Aquazzura Wild Thing                    Steve Madden Sassey

35.     Defendant's Sassey shoe mimics every key element of the trade dress of Aquazzura's well-known and distinctive Wild Thing.

36.     Similarly, a side-by-side comparison of Aquazzura's Christy and Defendant's Lecrew reveal that Defendant has again created a virtually identical knock-off of a sought-after Aquazzura design:

    

Aquazzura Christy                         Steve Madden Lecrew

37.     Defendant's Lecrew shoe mimics every key element of Aquazzura's Christy trade dress.  As shown from the images below, the laces connect identically on both shoes, creating the same distinctive pattern on the wearer's feet:

    

Aquazzura Christy                         Steve Madden Lecrew

38.     Upon information and belief, Defendant's use of Plaintiff's Aquazzura Trade Dresses is intended to mislead consumers into believing that Defendant's Infringing Shoes and

Plaintiff's Aquazzura Shoes are one and the same, or that the Infringing Shoes are made, approved, sponsored or endorsed by Plaintiff, or that the two companies are somehow connected. Defendant's shoes are also created with the specific intent to create post-sale confusion as to the source of Defendant's footwear, creating imitations of Plaintiff's footwear that cannot be distinguished post-sale.

39.     Upon information and belief, Defendant has imported, advertised, offered for sale, and sold the Infringing Shoes in the United States, including New York State and this judicial district.

40.     Upon information and belief, Defendant is intentionally targeting and seeking to sell the Infringing Shoes to Plaintiff's customers and potential customers who are familiar with the well-known trade dress of Plaintiff's Aquazzura Shoes.

41.     Defendant has never been associated or affiliated with or licensed by Plaintiff in any way, and the Infringing Shoes are not made by, affiliated with, sponsored by, or endorsed by Plaintiff.

42.     Upon information and belief, Defendant is using the infringing trade dress to pass off its goods as Plaintiff's and otherwise to benefit from the recognition and goodwill of Plaintiff's well-known Aquazzura Trade Dresses. Upon information and belief, Defendant's conduct is calculated to confuse and mislead consumers, create a false impression as to the source and sponsorship of Defendant's Infringing Shoes, divert business from Plaintiff, pass off the Infringing Shoes as being authorized and endorsed by Plaintiff, and otherwise falsely misrepresent the nature and quality of Defendant's products and misappropriate the goodwill associated with Plaintiff and its Aquazzura Trade Dresses.

43.     Upon information and belief, Defendant began using and is using the infringing trade dress with full knowledge of Plaintiff's prior exclusive rights, with knowledge of the reputation and goodwill of the Aquazzura Trade Dresses, and with knowledge that these identifiers are associated exclusively with Plaintiff and Plaintiff's goods.

44.     The goodwill that Plaintiff has built up in the Aquazzura Trade Dresses is put at risk by Defendant's appropriation and use of the Aquazzura Trade Dresses in connection with its business and goods.  Defendant's continued use of trade dresses nearly identical to that of the Aquazzura Trade Dresses in connection with a competing business is likely to continue to cause confusion in the marketplace, because purchasers and potential purchasers will assume that the goods sold by Defendant emanate from or are authorized by, licensed by, endorsed by, associated with, or otherwise connected with Plaintiff and/or Plaintiff's goods.  By virtue of Defendant's use of nearly identical trade dresses, potential purchasers will assume, incorrectly, that the Infringing Shoes are Plaintiff's.

45.     Defendant's use of trade dresses that so closely resemble Plaintiff's Aquazzura Trade Dresses unfairly and unlawfully wrests from Plaintiff control over its reputation.

46.     Defendant's unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiff's business and goodwill unless restrained by this Court.

47.     Plaintiff has no adequate remedy at law.

FIRST CLAIM FOR RELIEF – FEDERAL
TRADE DRESS INFRINGEMENT OF AQUAZZURA SEXY THING (15 U.S.C. § 1125(a))

48.     Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

49.     The Aquazzura Sexy Thing trade dress is used in commerce, is not functional, and has acquired secondary meaning in the marketplace.

50.     Defendant's Sharlit, which upon information and belief is being used in commerce, features trade dress that is confusingly similar to the Aquazzura Sexy Thing trade dress and is being marketed in a manner designed to confuse consumers.

51.     Defendant's manufacture, distribution, sale and promotion of the Sharlit shoe is likely to cause confusion and mistake and to deceive consumers as to the source, origin or sponsorship of the parties' products.

52.     Upon information and belief, Defendant chose to use the infringing Sharlit trade dress with actual knowledge of Plaintiff's prior use of and rights in the well-known and distinctive Aquazzura Sexy Thing trade dress.  Upon information and belief, Defendant used the infringing Sharlit trade dress in commerce with the intent to cause confusion, to cause mistake, or to deceive.

53.     Defendant's actions constitute willful trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff.

**SECOND CLAIM FOR RELIEF – FEDERAL**
**TRADE DRESS INFRINGEMENT OF AQUAZZURA WILD THING (15 U.S.C. § 1125(a))**

55. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

56. The Aquazzura Wild Thing trade dress is used in commerce, is not functional, and has acquired secondary meaning in the marketplace.

57. Defendant's Sassey shoe, which upon information and belief is being used in commerce, features trade dress that is confusingly similar to the Aquazzura Wild Thing trade dress and is being marketed in a manner designed to confuse consumers.

58. Defendant's manufacture, distribution, sale and promotion of the Sassey shoe is likely to cause confusion and mistake and to deceive consumers as to the source, origin or sponsorship of the parties' products.

59. Upon information and belief, Defendant chose to use the infringing Sassey trade dress with actual knowledge of Plaintiff's prior use of and rights in the well-known and distinctive Aquazzura Wild Thing trade dress. Upon information and belief, Defendant used the infringing Sassey trade dress in commerce with the intent to cause confusion, to cause mistake, or to deceive.

60. Defendant's actions constitute willful trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff.

**THIRD CLAIM FOR RELIEF – FEDERAL**
**TRADE DRESS INFRINGEMENT OF AQUAZZURA CHRISTY (15 U.S.C. § 1125(a))**

62. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

63. The Aquazzura Christy trade dress is used in commerce, is not functional, and has acquired secondary meaning in the marketplace.

64. Defendant's Lecrew shoe, which upon information and belief is being used in commerce, features trade dress that is confusingly similar to the Aquazzura Christy trade dress and is being marketed in a manner designed to confuse consumers.

65. Defendant's manufacture, distribution, sale and promotion of the Lecrew shoe is likely to cause confusion and mistake and to deceive consumers as to the source, origin or sponsorship of the parties' products.

66. Upon information and belief, Defendant chose to use the infringing Lecrew trade dress with actual knowledge of Plaintiff's prior use of and rights in the well-known and distinctive Aquazzura Christy trade dress.  Upon information and belief, Defendant used the infringing Lecrew trade dress in commerce with the intent to cause confusion, to cause mistake, or to deceive.

67. Defendant's actions constitute willful trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

68. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff.

FIFTH CLAIM FOR RELIEF – FEDERAL
UNFAIR COMPETITION (15 U.S.C. § 1125(a))

69. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

70. Defendant's use of the Aquazzura Trade Dresses in connection with its Infringing Shoes constitutes a false designation of origin and a false representation as to the origin of Defendant's goods, is likely to cause confusion, mistake, or deception as to the source of Defendant's goods, and is likely to create the false impression that Defendant's goods are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff.

71. Upon information and belief, Defendant chose to use the trade dresses of the Infringing Shoes with actual knowledge of Plaintiff's prior use of and rights in the Aquazzura Trade Dresses.  Upon information and belief, Defendant used the trade dresses of the Infringing Shoes in commerce with the intent to cause confusion, to cause mistake, or to deceive.

72. Defendant's actions constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

SIXTH CLAIM FOR RELIEF
UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

73. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

74. Defendant's conduct complained of herein is likely to confuse the public as to the origin, source or sponsorship of Defendant's goods, or to cause mistake or to deceive the public into believing that Defendant's goods are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiff, in violation of Plaintiff's rights in the Aquazzura Trade Dresses under New York State common law.

75. Upon information and belief, Defendant chose to use the trade dresses of the Infringing Shoes with constructive and/or actual knowledge of Plaintiff's prior use of and rights in the Aquazzura Trade Dresses.  By adopting and using a colorable imitation of the valuable and distinctive Aquazzura Trade Dresses, Defendant has been unjustly enriched and Plaintiff has been damaged.

76. By misappropriating and trading upon the goodwill and business reputation represented by the Aquazzura Trade Dresses, Defendant has been and, unless enjoined by this Court, will continue to be unjustly enriched at Plaintiff's expense.

77. Defendant's use of trade dresses nearly identical to the Aquazzura Trade Dresses constitutes unfair competition under New York common law.

78. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

SEVENTH CLAIM FOR RELIEF
VIOLATION OF THE NEW YORK DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
(N.Y. General Business Law § 349)

79. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

80. Defendant's use of the Aquazzura Trade Dresses in connection with the trade dresses of its Infringing Shoes is consumer-oriented, has the capacity to deceive, and is deceiving the public as to the source or sponsorship of Defendant's services.  As a result, the public will be damaged.

81. Defendant's conduct is willful and in knowing disregard of Plaintiff's rights.

82. Defendant has been and is engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.

83. Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and will continue to both damage Plaintiff and deceive the public unless enjoined by this Court.  Plaintiff has no adequate remedy at law.

EIGHTH CLAIM FOR RELIEF
FEDERAL DESIGN PATENT INFRINGEMENT OF U.S. DESIGN PATENT NO. D750,359
(35 U.S.C. § 271)

84. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

85. Plaintiff owns U.S. Design Patent No. D750,359 (the "'359 Patent"), which is valid and subsisting.

86. Defendant, without authorization from Plaintiff, has manufactured, imported, distributed, advertised, promoted, offered for sale and sold an Infringing Shoe, namely, the Lecrew, which substantially resembles the design claimed in the '359 Patent.  Defendant has been on notice

of Plaintiff's pending design patent at least since November 25, 2015.  The '359 Patent issued on

March 1, 2016.

87. An ordinary observer, giving such attention as a purchaser usually gives, would find the

design of Defendant's Lecrew shoe to be substantially the same as Plaintiff's patented design.

88. By the foregoing acts, Defendant has directly infringed, infringed under the doctrine of

equivalents, contributorily infringed, and/or induced infringement of, and continues to so infringe,

the '359 Patent.

89. On information and belief, the foregoing acts of infringement by Defendant have been

willful, intentional, and in bad faith, and with knowledge of Plaintiff's exclusive patent rights.

Defendant's acts constitute violations of Section 271 of the Patent Act, 35 U.S.C. § 271.

90. By adopting and using a colorable imitations of the patented design of Plaintiff's Christy

shoe, Defendant has caused and is causing substantial irreparable harm to Plaintiff and will continue

to damage Plaintiff unless enjoined by this Court.

91. Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff respectfully demands judgment as follows:

(1)      That an injunction be issued enjoining Defendant, its officers, agents, directors,

shareholders, principals, licensees, distributors, attorneys, servants, employees, affiliates,

subsidiaries and assigns, and all those persons in concert or participation with any of them from:

> a.      manufacturing, distributing, shipping, advertising, marketing, promoting,
>
> selling or otherwise offering for sale the Infringing Shoes or any product bearing
>
> the trade dress of any of the Infringing Shoes or any other trade dress that is
>
> confusingly similar to the trade dress of any of the Aquazzura Shoes;

b.      conducting any activities in the United States that relate to, refer to or concern the advertising, promotion, manufacture, production, importation, distribution, displaying, sale or offering for sale of shoes or any related goods and services, in any media or format, using the trade dress of the Infringing Shoes, or any other trade dress that is a simulation, reproduction, copy, colorable imitation or confusingly similar variation of any of the protected Aquazzura Trade Dresses;

c.      using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that any goods manufactured, imported, advertised, promoted, distributed, displayed, produced, sold or offered for sale by Defendant, or any services advertised, promoted, sold or offered for sale by Defendant, are in any manner associated or connected with Plaintiff, or are authorized, licensed, sponsored or otherwise approved by Plaintiff;

d.      engaging in any other activity constituting unfair competition with Plaintiff, or constituting an infringement of any of the Aquazzura Trade Dresses;

e.      applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry the Infringing Shoes trade dress, or any other mark or trade dress consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of any of the Aquazzura Trade Dresses, for shoes or any goods or services related to the foregoing;

f.      assisting, aiding or abetting any other person or business entity in

engaging in or performing any of the activities referred to in subparagraphs (a)

through (e) above;

(2)      That Defendant and those acting in concert or participation with it (including, but

not limited to, their officers, directors, agents, servants, employees, representatives, attorneys,

subsidiaries, related companies, successors, and assigns) take affirmative steps to dispel such

false impressions that heretofore have been created by their use of the Infringing Shoes,

including, but not limited to, delivering up to Plaintiff's attorneys for destruction all goods,

labels, tags, signs, stationery, prints, packages, promotional and marketing materials,

advertisements and other materials (a) currently in Defendant's possession, custody, or control,

or (b) recalled by Defendant pursuant to any order of the Court or otherwise, incorporating,

featuring or bearing the trade dress of any of the Infringing Shoes or any other simulation,

reproduction, copy or colorable imitation of any of the Aquazzura Trade Dresses;

(3)      Directing Defendant to deliver up to Plaintiff's attorneys an accounting of all

profits earned on the Infringing Shoes;

(4)      Directing such other relief as the Court may deem appropriate to prevent the

public from deriving the erroneous impression that any product manufactured, imported,

advertised, promoted, distributed, displayed, produced, sold or offered for sale, or any service

advertised, promoted, sold or offered for sale by Defendant is in any manner authorized by

Plaintiff or related in any way to Plaintiff;

(5)      Directing Defendant to file with the Court and serve upon Plaintiff's counsel

within thirty (30) days after entry of judgment a report in writing under oath, setting forth in

detail the manner and form in which it has complied with the above;

(6)     Awarding Plaintiff such damages it has sustained or will sustain by reason of Defendant's acts of trade dress infringement and unfair competition and that such sums be trebled pursuant to 15 U.S.C. § 1117;

(7)     Awarding Plaintiff all gains, profits, property and advantages derived by Defendant from Defendant's unlawful conduct and that such profits be enhanced pursuant to 17 U.S.C. § 1117;

(8)     Awarding to Plaintiff exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate;

(9)     Awarding to Plaintiff its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

(10)    Awarding to Plaintiff interest, including pre-judgment interest, on the foregoing sums; and

(11)    Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Aquazzura Italia SRL hereby demands trial by jury in this action.

Dated: June 23, 2016
      New York, New York

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____
      John P. Margiotta
      Felicity Kohn
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900
*Attorneys for Plaintiff*

EXHIBIT A

(12) **United States Design Patent**   (10) Patent No.:     **US D750,359 S**
    Osorio                              (45) Date of Patent:   **     Mar. 1, 2016**

(54) **SHOE**

(71) Applicant: **Aquazzura Italia SRL**, Florence (IT)

(72) Inventor: **Edgardo Osorio**, Florence (IT)

(73) Assignee: **AQUAZZURA ITALIA SRL**, Florence (IT)

(**) Term: **15 Years**

(21) Appl. No.: **29/531,394**

(22) Filed: **Jun. 25, 2015**

(30)          **Foreign Application Priority Data**

    Jan. 29, 2015   (EM) .................................. 002622720

(51) **LOC (10) Cl.** .............................................. **02-99**
(52) **U.S. Cl.**
    USPC ............... **D2/929**; D2/930; D2/931; D2/935;
                                                    D2/971
(58) **Field of Classification Search**
    USPC ........... D2/902, 906–908, 944, 969, 971–974
    CPC .. A43B 13/181; A43B 13/141; A43B 13/186;
            A43B 13/188; A43B 23/00; A43B 23/02;
            A43B 5/00; A43B 23/26; A43B 1/04; A43B
            11/14; A43B 7/00; A43C 1/00; A43C 1/04;
                                                   A43C 1/06
    See application file for complete search history.

(56)              **References Cited**

              U.S. PATENT DOCUMENTS

    1,798,271 A  *  3/1931  Perugia ...................... A43C 1/04
                                                        24/715.1
    D84,741  S  *  7/1931  Grossman ...................... D2/935
    D94,348  S  *  1/1935  Heilbrunn ...................... 36/11.5
    D94,640  S  *  2/1935  Stritter ...................... 36/11.5
    D95,204  S  *  4/1935  Haflin ...................... D2/931
    D95,732  S  *  5/1935  Dunbar ...................... D2/933
    D131,318 S  *  2/1942  Levin ...................... 36/11.5
    D132,351 S  *  5/1942  Boothby ...................... D2/973
    D134,668 S  * 12/1942  Sandler ...................... D2/931

    D149,683 S  *  5/1948  Sandler ...................... D2/930
    D163,019 S  *  4/1951  Braun ...................... D2/928
    D163,360 S  *  5/1951  Braun ...................... D2/935
    D164,847 S  * 10/1951  Dronoff ...................... A43C 1/00
                                                        D2/971
    4,870,761 A  * 10/1989  Tracy ...................... A43C 1/04
                                                        24/712
    4,974,299 A  * 12/1990  Moon ...................... A43C 1/04
                                                        24/714.6
    5,755,044 A  *  5/1998  Veylupek ...................... A43C 1/06
                                                        36/50.1
    D501,712 S  *  2/2005  Choi ...................... D2/971
    D526,117 S     8/2006  Choi
    D530,901 S    10/2006  Choi
    D535,466 S     1/2007  Choi
    D536,165 S     2/2007  Kelsey
    D536,521 S     2/2007  Choi
    D537,241 S     2/2007  Choi
    D540,023 S     4/2007  Kelsey
    D540,529 S     4/2007  Kelsey
    D541,035 S     4/2007  Kelsey
    D544,191 S  *  6/2007  Choi ...................... D2/971
    D544,193 S     6/2007  Choi
    D564,203 S  *  3/2008  Choi ...................... D2/971
    D572,895 S     7/2008  Lawler
                            (Continued)

*Primary Examiner* — Dominic Simone
(74) *Attorney, Agent, or Firm* — Leason Ellis LLP

(57)              **CLAIM**
The ornamental design for a shoe, as shown and described.

              **DESCRIPTION**

FIG. **1** is a perspective view of a shoe, showing my new design;
FIG. **2** is a top plan view thereof;
FIG. **3** is a rear elevation view thereof;
FIG. **4** is a front elevation view thereof;
FIG. **5** is a perspective view of a second embodiment of the shoe of FIG. 1; and,
FIG. **6** is a side elevation view thereof.
The broken lines illustrate environmental structure and form no part of the claimed design.

              **1 Claim, 6 Drawing Sheets**





Fig. 1



Fig. 2



Fig. 3



Fig. 4



Fig. 5



Fig. 6